# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| **DYNAMIC DATA TECHNOLOGIES, LLC,** § | |
| § | Civil Case No. 2:18-cv-466-RWS |
| *Plaintiff*, § | JURY TRIAL DEMANDED |
| § | **FILED UNDER SEAL** |
| v. § | |
| § | |
| **GOOGLE LLC AND YOUTUBE, LLC,** § | |
| § | |
| *Defendants*. § | |
| § | |

## DEFENDANTS GOOGLE LLC AND YOUTUBE, LLC'S REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(B)(3) AND 12(B)(6)

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................... 1

II. GOOGLE'S GGC SERVERS ARE NOT REGULAR AND ESTABLISHED PLACES OF BUSINESS ......................................................................................... 1

    A. DDT's Reliance on *Seven* is Misplaced and Ignores Subsequent Authority ......... 1

    B. DDT's Arguments Demonstrate that the GGC Servers do not Satisfy *Cray* ......... 2

    C. DDT Ignores the Facts that Demonstrate GGC Servers are not Regular and Established Places of Business ............................................................................ 3

III. THE ▮▮▮▮▮▮▮▮▮▮ IS NOT A PLACE OF BUSINESS OF GOOGLE ...................... 4

IV. ▮▮▮▮▮▮▮▮▮▮▮▮ IS NOT A PLACE OF BUSINESS ............................................... 6

V. N.D. CAL. IS THE MOST APPROPRIATE VENUE IF THIS CASE IS TRANSFERRED ...................................................................................................... 8

VI. DDT HAS NOT PLAUSIBLY ALLEGED PRE-SUIT KNOWLEDGE ....................... 9

VII. CONCLUSION ....................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page

**CASES**

*Cascades Comp. Innovation, LLC v. Samsung Elecs. Co.*,
   77 F. Supp. 3d 756 (N.D. Ill. 2015) ...................................................................................... 10

*CUPP Cybersecurity LLC v. Symantec Corp.*,
   No. 3:18-CV-01554-M, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ........................... 1, 2, 3

*Elms 3DS Innovations, LLC v. Samsung Elecs. Co.*,
   No. 14-1430-LPS-CJB, 2015 U.S. Dist. LEXIS 130699 (D. Del. Sept. 29,
   2015) ....................................................................................................................................... 9

*Evolved Wireless, LLC v. Samsung Elecs., Co.*,
   No. 15-545-SLR-SRF, 2016 U.S. Dist. LEXIS 32794 (D. Del. Mar. 15, 2016) .................... 10

*HomeBingo Network, Inc. v. Chayevsky*,
   428 F. Supp. 2d 1232 (S.D. Ala. 2006) ................................................................................... 3

*In re Cray Inc.*,
   871 F.3d 1355 (Fed. Cir. 2017) ...................................................................................... passim

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ............................................................................................... 8

*In re: ZTE (USA), Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018) ........................................................................................... 4, 5

*InvestPic LLC v. FactSet Research Sys., Inc.*,
   No. 10-1028-SLR, 2011 U.S. Dist. LEXIS 1128914 (D. Del. Sept. 30, 2011) ....................... 9

*Magee v. Coca-Cola Refreshments USA, Inc.*,
   833 F.3d 530 (5th Cir. 2016) ................................................................................................... 4

*Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*,
   No. 17-CV-1725 (JPO), 2018 WL 1478047 (S.D.N.Y. Mar. 26, 2018) .................................. 4

*Personal Audio LLC v. Google Inc.*,
   280 F. Supp. 3d 922 (E.D. Tex. 2017) ................................................................................ 2, 6

*SEVEN Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018) .............................................................................1, 2, 4

*Soverain IP, LLC v. Microsoft Corp.*,
   No. 2:17-CV-00204-RWS-RSP, 2018 U.S. Dist. LEXIS 49661 (E.D. Tex.
   Mar. 26, 2018) ..........................................................................................................................9

*State Indus., Inc. v. A.O. Smith Corp.*,
   751 F.2d 1226 (Fed. Cir. 1985) ................................................................................................9

*Taylor v. Charter Med. Corp.*,
   162 F.3d 827 (5th Cir. 1998) ....................................................................................................2

**STATUTES**

28 U.S.C. § 1694 ..............................................................................................................................4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 ................................................................................................2

## I. INTRODUCTION

After a full opportunity to conduct venue-related discovery, Plaintiff Dynamic Data Technologies, LLC's ("DDT") has come up far short: It still cannot allege facts sufficient to meet its burden of proof to show that venue is proper in this District. Rather than grapple with the facts and relevant case law, DDT urges this Court to adopt the conclusions drawn in *Seven Networks* wholesale. But DDT ignores both the Federal Circuit's guidance that those conclusions should be further examined by district courts and Judge Lynn's subsequent decision in *CUPP* rejecting the conclusion that computer hardware on a shelf at a third party's facility supports venue.

DDT offers up three possible bases for venue: (1) the GGC server hardware housed in third party facilities; (2) ███████████████████████████████████████████; and (3) ███████████████████████████████████████████. To recite these possibilities is to show that Google has no place of business in the District: None satisfies the *Cray* factors, and venue is therefore improper. Dismissal is warranted and DDT's argument for transfer to Delaware, rather than the Northern District of California, is unavailing.

Finally, DDT alleges Defendants' pre-suit knowledge of the asserted patents based on (1) citation to a patent *application*, (2) third parties' knowledge and (3) a letter pointing out un-asserted Chinese patents and burying the asserted patents among hundreds of other items. None plausibly supports pre-suit knowledge or DDT's claims for pre-suit willfulness and pre-suit inducement.

## II. GOOGLE'S GGC SERVERS ARE NOT REGULAR AND ESTABLISHED PLACES OF BUSINESS

### A. DDT's Reliance on *Seven* is Misplaced and Ignores Subsequent Authority

The crux of DDT's argument regarding the GGC servers is that this Court should fully adopt the reasoning and conclusions in *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018) (hereinafter "*Seven Networks*"). DDT's wholesale reliance on *Seven*

*Networks* is misplaced for two main reasons. First, the Federal Circuit denied mandamus review in *Seven Networks* without reaching the merits and recognized that the question raised—whether servers housed at a third-party facility are sufficient to establish venue—should be further examined and "percolate in the district courts." *See* Mtn. at 1. DDT does not address this guidance and the question is far from settled as DDT suggests. Second, although DDT devotes a significant portion of its brief to criticizing the earlier *Personal Audio* decision (Opp. at 21–22), DDT never addresses Judge Lynn's subsequent decision in *CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18-CV-01554-M, 2019 WL 1070869, at *3 (N.D. Tex. Jan. 16, 2019), which concluded that servers do *not* constitute regular and established places of business.[1]

### B. DDT's Arguments Demonstrate that the GGC Servers do not Satisfy *Cray*

Beyond embracing *Seven Networks*, DDT advances three arguments, none of which can be squared with *Cray*. First, DDT argues that Google is in "the business of storing, organizing and distributing data." (Opp. at 4.) But, as *CUPP* recognized, such electronic communications cannot be a place of business under *Cray*. 2019 WL 1070869 at *3. The venue statute "cannot be read to refer merely to a virtual space or to electronic communications." *Cray*, 871 F.3d at 1362.

Second, DDT relies on a single line of deposition testimony that a server "is a physical thing, so therefore it is in a physical location" to argue that the GGC servers are a place of business. (Opp. at 7.) Both *Personal Audio* and *CUPP* rejected this argument, finding it contrary to the plain wording of the statute, which requires a "place of business," not just some physical object:

---

[1] DDT goes so far as to suggest that this Court take judicial notice of the "factual findings" in *Seven Networks*. (Opp. at 3–4.) That would plainly be improper: the Fifth Circuit has made clear that a court "cannot take judicial notice of the factual findings of another court" unless those findings are shown to be "not subject to reasonable dispute." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998). The Fifth Circuit explained it had "difficulty conceiving" of an adjudicative fact from a court record that would satisfy this test, and the facts here obviously do not. *Id.* at n.18. Given the Federal Circuit's call for percolation and other contrary district court opinions, the "findings" in *Seven Networks* (which were part of a denial of a motion to dismiss under Rule 12) are particularly inapt for judicial notice.

"[S]ervers are not a building or a part of a building. Servers are hardware, the physical electronic equipment used to operate the internet or an intranet." *CUPP*, 2019 WL 1070869, at *3 (citation and quotation omitted). If any physical object qualified as a place of business, the venue statute would be emptied of all limiting force.

Third, DDT argues the GGC servers are places of business akin to warehouses for electronic data. (Opp. at 8–9.) However, DDT offers no explanation as to how such a "warehouse" for electronic data is different from a "virtual space," which *Cray* made clear is not a "place of business" within the meaning of the statute. *In re Cray Inc.*, 871 F.3d 1355, 1362 (Fed. Cir. 2017).

### C. DDT Ignores the Facts that Demonstrate GGC Servers are not Regular and Established Places of Business

DDT does not meaningfully address—and often ignores—points raised in Defendants' Motion. And, despite seeking and receiving extensive deposition testimony, DDT avoids the undisputed facts, too. As confirmed by Mr. McCallion during his deposition:

- ███████████████████████████████████████████ (*see* Ex. A (McCallion Dep.) at 84:3–6; 141:6–9; 217:14–218:8);

- The servers are manufactured, ███████████ by third parties (*id.* at 149:4–9; 169:4–14; 242:22–243:10);

- ███████████████████████████████████████████ (*id.* at 153:7–12);

- ███████████████████████████████████████████ ███████████████ (*id.* at 119:9–13; 121:6–14; 141:6–9; Ex. B (McCallion Dep. Ex. 3);

- ███████████████████████████ (*id.* at 123:6–124:2); and

- No Google employee has visited the servers, ███████████████ ████████████████████ (*id.* at 195:20–196:2; 228:6–9).

Nor did DDT explain how the GGC servers differ from the slot machines or vending machines that courts have rejected as "places of business." *See, e.g., HomeBingo Network, Inc. v. Chayevsky*,

- 3 -

428 F. Supp. 2d 1232, 1250 (S.D. Ala. 2006); *see also Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530, 534 (5th Cir. 2016).

DDT also ignores that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See* Ex. A at 55:20–58:2.) This fact strongly reinforces the fact that the GGC servers—personal property designed to temporarily hold electronic data while sitting on a shelf at a third party's facility under a service agreement—are not a "permanently fixed" "place" of business in this District sufficient to establish venue. *Cray*, 871 F.3d at 1363.

Relying, again, on *Seven Networks*, DDT argues that a place of business need not also be a place of employment. (Opp. at 9, 13.) First of all, the service statute makes clear that a place of business must have employees or other agents conducting business there. *See* 28 U.S.C. § 1694; *Peerless Network, Inc. v. Blitz Telecom Consulting, LLC*, No. 17-CV-1725 (JPO), 2018 WL 1478047, at *4 (S.D.N.Y. Mar. 26, 2018). Further, DDT does not—and cannot—dispute that Google's having no employees at any of the purported "places of business" is relevant to whether those are places of *Google's* business under *Cray*. Under Federal Circuit law this fact is clearly relevant, if not controlling.[2]

### III. THE ▮▮▮▮▮▮▮▮ IS NOT A PLACE OF BUSINESS OF GOOGLE

As to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, DDT argues a ▮▮▮▮▮▮▮▮▮▮ where Pixel phones are repaired is a place of Google's business. DDT again ignores testimony about that facility and a range of facts highlighting why ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not support venue here.



▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. C (Pandian Dep.) at 156:1–7; 207:1–21; 215:18–216:19; 236:15–

---

[2] Google is unaware of any Federal Circuit decisions that have held a location to be a "place of business" in the absence of at least some employees of a defendant. Indeed, the Federal Circuit has indicated that even a facility with "at least two full-time employees (supervisors) on site" still may not be a regular and established place of business of a defendant. *In re: ZTE (USA), Inc.*, 890 F.3d 1008, 1015 (Fed. Cir. 2018).

237:5.) ███

███ (*id.* at 167:11–19); ███

███ (*id.* at 154:6–21); ███

███ (*id.* at 152:10–16; 214:16–215:2; 215:18–216:19). Moreover, DDT does not and cannot contend that there are any signs indicating that the facility is a place of business for Google.[3] These facts are weaker than those that the Federal Circuit addressed in *ZTE,* where the Federal Circuit found that a third-party call center facility with 60 dedicated ZTE contractors *and* full time ZTE employees on site did not necessarily establish venue. *ZTE,* 890 F.3d at 1015.

None of DDT's various arguments transform these facts into viable basis for venue. DDT ignores ███ and deposition testimony while cherry-picking ███

███

███ (*See* Ex. C at 207:1–21; 236:15–237:5.) ███

███ (*Id.* at 154:6–21; 167:11–19.) ███

███ (*Id.* at 238:12–239:9; 240:6–19; 242:14–243:8; 245:20–246:9.) ███

███

---

[3] Nor does the use of Google packaging amount to Google holding ███ out as its own place of business. Using Google's packaging makes sense because it allows Google to ensure that the products are packaged safely. Moreover, the packaging does not indicate ███ (or Google prominently) because such packaging would make it a target for theft during transit. (*See* Ex. C at 255:3-15 (███.)

[4] DDT attempts a rhetorical sleight of hand by denominating the ███ ███ That argumentative relabeling cannot, of course, transform ███ ███ into a Google place of business.

███ (*Id.* at 207:1–21; 208:13–209:1; 236:15–237:5; 238:12–239:9; 242:14–243:8.) ███ that would not make ███ a "place" of Google.

Moreover, ███ (*Id.* at 260:1–261:4; 261:12–262:5). The fact is that ███ (*See id.*) Furthermore, although DDT omits this fact in its argument, ███.[5] (*Id.* at 209:1–210:14.)

Finally, ███ undermines DDT's arguments and in fact signals a lack of control. ███ (*Id.* at 230:18–21; 249:12–251:4, 252:7–13; Dkt. 37-2 (SOW No. 463889, Ex. C).) If the ███ was Google's, there would be no need for ███ The bottom line is that ███ does not mean that Google has a place of business in the District.

### IV.   ███ IS NOT A PLACE OF BUSINESS

When Judge Clark refused to ground venue on the GGC servers in *Personal Audio*, he explained that such a holding could "distort the scope of the [venue] statute" by making things like "AT&T tower[s]" places of business, a clearly improper outcome. *See Personal Audio LLC v.*

---

[5] ███. (*See id.* at 56:2–18; 196:5–19.)

*Google Inc.*, 280 F. Supp. 3d 922, 934 (E.D. Tex. 2017).  DDT now openly beckons that outcome, claiming ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ constitutes a regular and established place of business.  The argument is as wrong as it sounds; indeed, it is more attenuated than DDT's argument as to the GGC servers.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—not a place for doing business.  Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Finally, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Ex. D (Livingston Dep.) at 12:20–13:10; 24:8–20; 73:20–74:10; 103:5–14; 154:10–21.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.* at 113:10–114:16; 115:21–116:3.)

The so-called ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and also do not establish venue.  (*See id.* at 31:22–32:6; 155:5–21.)  First, they are not a place of business: they are not themselves real property, and Google has no agent or employee conducting its business there.  Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Indeed, even DDT admits that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Opp. at 18.)  But, as made clear by *Cray*, the transmission of electronic data does not constitute a place of business.

DDT's argument that ▮▮▮▮▮▮▮▮▮▮▮▮ are places of business is no more availing.  As with the ISP facilities with GGC servers: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- 7 -

Case 2:18-cv-00466-RWS Document 42 Filed 07/01/19 Page 12 of 15 PageID #: 1605

▇▇▇▇▇▇▇▇ (Ex. D at 29:6–30:5); ▇▇▇▇▇▇▇▇ [6] (*id.* at 65:21–66:12; 185:19–186:7); ▇▇▇▇▇▇▇▇ (*id.* at 45:15–49:6; 99:8–20); and ▇▇▇▇▇▇▇▇ [7] (*id.* at 34:5–35:8; 43:8–15; 47:13–48:8; 193:19–194:5). ▇▇▇▇▇▇▇▇ the facts do not establish that Google has any control over that space. (*See id.* at 12:20–13:10; 24:8–20; 29:6–30:5.)

Google has not held out ▇▇▇▇▇▇▇▇, as places of business of Google. DDT does not—and cannot—point to any Google signage or directory listings. (*See, e.g.*, *id.* at 171:8-172:5 ▇▇▇▇▇▇▇▇.) ▇▇▇▇▇▇▇▇. (*Id.* at 46:1-15 (▇▇▇▇▇▇▇▇)) That Google has stated that it has a network that ▇▇▇▇▇▇▇▇ does nothing to endorse ▇▇▇▇▇▇▇▇ as a place of business.[8]



## V. N.D. CAL. IS THE MOST APPROPRIATE VENUE IF THIS CASE IS TRANSFERRED

Should the Court decide transfer rather than dismissal is appropriate here, Google respectfully submits that N.D. Cal. is the most appropriate district for transfer. Following recent settlements, only Defendants' and Qualcomm's cases remain in this District. Google and YouTube are headquartered in N.D. Cal.; there is substantial overlap of the issues and patents asserted against Google, YouTube, and Qualcomm; and Qualcomm has already moved to transfer to N.D. Cal. Witness convenience is the "single most important factor" in the transfer analysis. *See In re*

---

[6] DDT notes that ▇▇▇▇▇▇▇▇ (*See id.* at 63:21–64:22; 192:5–7; 219:220:2.)

[7] ▇▇▇▇▇▇▇▇ (*See id.* at 66:21–69:15; Ex. E.)

[8] DDT's argument to the contrary would similarly render cables at the bottom of the ocean (which are also part of the network) a Google place of business.

- 8 -

*Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009).  As such, N.D. Cal. is the most appropriate venue for transfer, as set forth in Defendants Motion to Transfer Venue under § 1404.

## VI.  DDT HAS NOT PLAUSIBLY ALLEGED PRE-SUIT KNOWLEDGE

DDT offers three assertions in support of its contention that the Defendants knew of, or were recklessly indifferent to, the asserted patents, none of which are availing: (1) Google cited the application that *eventually* issued as the asserted '112 Patent, (2) the asserted patents were known in "the industry" and were cited by others, and (3) DDT sent a letter to Google that specifically identified certain (unasserted) Chinese patents and attached a list of hundreds of patents in DDT's portfolio.  None of these arguments is sufficient.  First, DDT does not, and cannot, dispute that Google's citation to the application that eventually issued as the asserted '112 Patent does not itself constitute notice.  *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985).  At most, it would only extend to the '112 Patent, regardless.

Second, as to "industry wide" knowledge, DDT's authority does not suggest that the sort of generalized industry-wide allegations DDT makes are sufficient to plausibly suggest pre-suit notice.  The cases involved significant facts that are not present here.  In *Soverain IP, LLC v. Microsoft Corp.*, the allegations included that the defendant itself **cited the asserted patent 11 times**.  No. 2:17-CV-00204-RWS-RSP, 2018 U.S. Dist. LEXIS 49661, at *4–5 (E.D. Tex. Mar. 26, 2018).  Likewise, in *Elms 3DS Innovations, LLC v. Samsung Elecs. Co.*, the complaint alleged "detailed discussions" dating back more than a decade.  No. 14-1430-LPS-CJB, 2015 U.S. Dist. LEXIS 130699, at *9 (D. Del. Sept. 29, 2015).  In *InvestPic LLC v. FactSet Research Sys., Inc.*, the patentee's products were available to the defendant and marked with the asserted patent.  No. 10-1028-SLR, 2011 U.S. Dist. LEXIS 1128914, at *4 (D. Del. Sept. 30, 2011).[9]

---

[9] DDT's attempt to distinguish the authority as being pre-*Halo* misses the mark.  *Halo* addressed the "objective" prong of the prior *Seagate* test, whereas here, the question is one of the Defendants' subjective knowledge.

Third, as to DDT's letter to Google alleging infringement of un-asserted Chinese patents, the Defendants do not dispute that the patents-in-suit were included, buried, in a list of hundreds of other patents. But courts have made clear that such inclusion does not establish pre-suit notice. *See, e.g.*, *Evolved Wireless, LLC v. Samsung Elecs., Co.*, No. 15-545-SLR-SRF, 2016 U.S. Dist. LEXIS 32794 (D. Del. Mar. 15, 2016); *Cascades Comp. Innovation, LLC v. Samsung Elecs. Co.*, 77 F. Supp. 3d 756 (N.D. Ill. 2015). DDT's attempts to distinguish these cases fail. DDT wrongly claims that in both cases, attention was drawn towards specific patents, to the exclusion of the others. The *Evolved Wireless* decision expressly notes that the notice letter "[did] not specifically identify any of the eighty-five listed patents in the body of the letter itself." 2016 WL 1019667, at *10. Moreover, DDT overlooks that its letter called attention to certain Chinese patents while burying the now-asserted patents in an attached list of hundreds of others. *See* Mtn. at 13.

Finally, DDT has made *no* allegations as to YouTube's pre-suit knowledge. DDT's attempt to impute knowledge from Google to YouTube as a form of "constructive notice" fails. (Opp. at 29.) This disregard for the corporate form has no basis in the law, and DDT has not plausibly alleged any knowledge to impute. DDT's suggestion that the Complaint used YouTube and Google interchangeably ignores that the notice allegations it does make are specific to Google (*e.g.*, Google's citation of an application, a letter sent to Google). The foregoing provides independent grounds to dismiss pre-suit inducement and willfulness claims against YouTube.

**VII.  CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court (1) dismiss this case for improper venue or, alternatively, transfer this case to the N.D. Cal, and (2) dismiss DDT's claims of pre-suit willfulness and pre-suit induced infringement for failure to state a claim.

- 10 -

| | |
|---|---|
| Dated: June 28, 2019 | /s/ *Krista S. Schwartz* |
| | Krista S. Schwartz |
| | ksschwartz@jonesday.com |
| | JONES DAY |
| | 555 California Street, Suite 2600 |
| | San Francisco, CA 94104 |
| | Telephone: (415) 626-3939 |
| | |
| | Michael C. Hendershot |
| | mhendershot@jonesday.com |
| | JONES DAY |
| | 1755 Embarcadero Road |
| | Palo Alto, CA 94303 |
| | Telephone: (650) 739-3900 |
| | |
| | Michael E. Jones |
| | SBN: 10929400 |
| | mikejones@potterminton.com |
| | Patrick C. Clutter |
| | SBN: 24036374 |
| | patrickclutter@potterminton.com |
| | POTTER MINTON |
| | 110 N. College, Suite 500 |
| | Tyler, Texas 75702 |
| | |
| | Attorneys for Defendants Google LLC and YouTube, LLC |

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on June 28, 2019.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on June 28, 2019.

/s/ *Krista S. Schwartz*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document is authorized to be filed under seal pursuant to the Protective Order entered in lead and consolidated cases.

/s/ *Krista S. Schwartz*